#26736-a-LSW

**2014 S.D. 22**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

BAC HOME LOANS SERVICING, LP
f/k/a COUNTRYWIDE HOME
LOANS SERVICING, LP,

Plaintiff and Appellee,

v.

THOMAS C. TRANCYNGER;
SUSAN D. TRANCYNGER,

Defendants and Appellants,

and

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
and ANY PERSON IN POSSESSION,

Defendants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE RANDALL L. MACY
Judge

\* \* \* \*

DAVID C. PIPER of
Mackoff Kellogg Law Firm
Dickinson, North Dakota

Attorneys for plaintiff
and appellee.

DAVID L. CLAGGETT
Spearfish, South Dakota

Attorney for defendants
and appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 18, 2014

OPINION FILED **04/16/14**

#26736

WILBUR, Justice

[¶1.]     The circuit court granted summary judgment to BAC Home Loans Servicing, LP (BAC) entitling BAC to foreclose on its residential real estate mortgage. The circuit court also awarded attorney fees to BAC and reformed the mortgage by changing the legal description. Thomas Trancynger and Susan Trancynger (Trancyngers), husband and wife, appeal, arguing that a genuine issue of material fact precludes summary judgment. We affirm.

*Background*

[¶2.]     Trancyngers entered into a mortgage with Countrywide Home Loans (Countrywide) in February 2003.[1] The mortgage secured a promissory note in the original amount of $165,750 and encumbered the property commonly known as Lot 26. In July 2003, Lot 26 was subdivided into Lot 26A and Lot 26B. The plat was recorded in December 2003. In May 2005, a modification of mortgage and partial release of Lot 26B executed by Countrywide was filed with the Lawrence County Register of Deeds.

[¶3.]     Trancyngers later refinanced the above-described loan by executing a promissory note in May 2007 in favor of Countrywide in the original amount of $236,900. On the same day, the Trancyngers executed a mortgage on the above-

---

1.    BAC Home Loans Servicing, LP is frequently known as Countrywide Home Loans Servicing, LP. Any mention of Countrywide throughout this opinion refers to BAC.

described property in favor of BAC.[2] The mortgage encumbered all of Lot 26 instead of Lot 26A.

[¶4.] Trancyngers defaulted under the terms of the subject note and mortgage in 2009, and BAC initiated its lawsuit to foreclose the mortgage in June 2009. After learning the mortgage encumbered all of Lot 26, BAC amended its complaint in September 2011 in order to reform the mortgage to encumber only Lot 26A. Trancyngers failed to file an answer to BAC's original complaint. Trancyngers filed an answer to the amended complaint in March 2013.

[¶5.] A summary judgment hearing was held on April 1, 2013. At this hearing the circuit court granted BAC's motion to reform the mortgage to encumber only Lot 26A, but continued the hearing until May 3, 2013, to allow the parties to further brief the issue of whether summary judgment of foreclosure was appropriate. At the May 3 hearing the circuit court concluded there were no genuine issues of material fact and granted BAC's motion for summary judgment.

[¶6.] Trancyngers filed a notice of appeal on June 28, 2013. On June 25, 2013, Trancyngers received the notice of real estate sale, which was scheduled to take place on August 16, 2013. On August 2, Trancyngers moved to stay the real estate sale by way of supersedeas bond. A telephonic hearing was held August 12. The circuit court set the bond at $9,000 and required Trancyngers to post the bond

---

2. The mortgage was initially executed in favor of Mortgage Electronic Registration Systems, Inc. This mortgage was recorded in the office of the Register of Deeds in Lawrence County, South Dakota in June 2007. The mortgage was assigned to BAC prior to this action.

with the court by August 15 in order to stay the August 16 sheriff's sale.[3]

Trancyngers did not provide the required bond and the property was sold to BAC at

the August 16 sheriff's sale. BAC filed a satisfaction of judgment in October 2013.

[¶7.]    The following issues are raised on appeal:

> 1.    Whether Trancyngers' failure to post a supersedeas bond to stay the foreclosure sale renders this appeal moot.
>
> 2.    Whether the circuit court erred in granting BAC summary judgment to foreclose the mortgage.
>
> 3.    Whether the circuit court erred in awarding BAC attorney fees and costs.
>
> 4.    Whether the circuit court erred in reforming the mortgage.

*Standard of Review*

[¶8.]    Our review of summary judgment is well-settled:

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*De Smet Farm Mut. Ins. Co. of S.D. v. Busskohl*, 2013 S.D. 52, ¶ 11, 834 N.W.2d

826, 831 (citation omitted). "[A] trial court's award of attorney fees is reviewed

under an abuse of discretion standard." *Eagle Ridge Estates Homeowners Ass'n,*

---

3.    Aside from the facts presented in BAC's brief, there is no transcript of this hearing or any record of the trial court's decision. However, Trancyngers do not refute BAC's facts.

*Inc. v. Anderson*, 2013 S.D. 21, ¶ 13, 827 N.W.2d 859, 865 (citation omitted). "An abuse of discretion is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Roth v. Haag*, 2013 S.D. 48, ¶ 11, 834 N.W.2d 337, 340 (citation omitted).

*Decision*

[¶9.]      1.      *Whether Trancyngers' failure to post a supersedeas bond to stay the foreclosure sale renders this appeal moot.*

[¶10.]      BAC argues that Trancyngers' failure to post a supersedeas bond resulting in the failure to stay the real estate foreclosure sale renders this appeal moot because this Court is without power to rescind a foreclosure sale. This Court only decides "actual controversies affecting people's rights." *Sullivan v. Sullivan*, 2009 S.D. 27, ¶ 11, 764 N.W.2d 895, 899 (citation omitted). "Accordingly, an appeal will be dismissed as moot where, before the appellate decision, there has been a change of circumstances or the occurrence of an event by which the actual controversy ceases and it becomes impossible for the appellate court to grant effectual relief." *Id.* (citation omitted).

[¶11.]      The actual controversy regarding this appeal is whether summary judgment was appropriate. In essence, BAC is claiming that the foreclosure sale eradicated that controversy so that even if we agree with Trancyngers on the summary judgment issues, our decision cannot rescind the foreclosure sale. We disagree. Courts of this state have the power to reverse judgments and set aside foreclosure sales. *See* SDCL 15-30-2; *DJBAS Living Trust v. Meinhardt*, 2008 S.D. 84, 755 N.W.2d 501 (affirming a circuit court's ruling to set aside a foreclosure sale); *Rist v. Hartvigsen*, 70 S.D. 571, 19 N.W.2d 830 (1945) (this Court decided, on the

merits, an action brought to set aside a foreclosure sale); *Lipsey v. Crosser*, 63 S.D. 185, 257 N.W. 125, 129 (1934) (reversing the circuit court and holding that "appellants are entitled upon this record to have the deed canceled, the sale set aside, and an accounting of respondent's possession").

[¶12.]     Moreover, BAC was the purchaser at the foreclosure sale and is now a party before this Court. We further note that the foreclosure sale is subject to statutory rights of redemption. *See* SDCL chapter 21-49. "Based on equitable principles, redemption has long provided a means for reversing sales of real property. Where, as here, the creditor-purchaser is before the [C]ourt, the [C]ourt could exercise similar equitable principles and reverse the sale." *In re Sun Valley Ranches, Inc.*, 823 F.2d 1373, 1375 (9th Cir. 1987). Under these specific circumstances, "it would not be impossible for the Court to fashion some sort of relief." *Id.* (citation omitted); *see also Sullivan*, 2009 S.D. 27, ¶ 11, 764 N.W.2d at 899 (citation omitted). Therefore, Trancyngers' appeal is not moot.

[¶13.]     2.     *Whether the circuit court erred in granting BAC summary judgment to foreclose the mortgage.*

[¶14.]     Trancyngers assert that BAC is not entitled to foreclosure on summary judgment because BAC was precluded from initiating foreclosure proceedings and utilized improper tactics throughout the proceedings. Trancyngers claim "that good faith has not existed on the part of BAC" and "that the mortgage handling and foreclosure practices of which Trancyngers complain mirror documented national mortgage abuse practices." In reference to the national mortgage abuse practices, Trancyngers point to a consent judgment obtained in the United States District Court, District of Columbia, *United States, et al. v. Bank of America, et al.*, No. 12-

361 (D.D.C.), which was the "result of settlements between government entities and major mortgagees . . . for alleged misconduct in home-mortgage practices." *Ghaffari v. Wells Fargo Bank. N.A.*, ___ F. Supp. 2d ___, 2013 WL 6070364, at *3 (D.D.C. Nov. 19, 2013).

[¶15.] General allegations which do not set forth specific facts will not prevent summary judgment. *Citibank S.D., N.A. v. Schmidt*, 2008 S.D. 1, ¶ 8, 744 N.W.2d 829, 832 (citing *Bordeaux v. Shannon Cnty. Sch.*, 2005 S.D. 117, ¶ 14, 707 N.W.2d 123, 127). Trancyngers liken their unsuccessful loan modification to the unfair mortgage practices outlined in national news publications. Trancyngers further link the unfair mortgage practices to the consent judgment settlement and claim that because a settlement was reached, BAC is not entitled to a foreclosure and must refinance the mortgage. Trancyngers' reliance on national mortgage abuse practices without setting forth any particular mistreatment regarding their loan fails to raise any genuine issue of material fact because the assertion relies on general allegations at an aggregate level.

[¶16.] Trancyngers attempt to set forth specific facts by arguing that BAC's loan modification process was improper because BAC returned two payments—one for failure to submit a certified check and the other for lack of the necessary funds to bring the default current. Aside from their vague reliance on the consent judgment, Trancyngers fail to cite to any authority that requires BAC to accept partial payment and renegotiate the loan. Even if the Trancyngers could articulate what part of the consent judgment requires BAC to renegotiate the loan, they cannot enforce the consent judgment because they are not a party to that action.

*Ghaffari*, ___ F. Supp. 2d at ___, 2013 WL 6070364, at *3 ("[T]hird parties to government consent decrees cannot enforce those decrees absent an explicit stipulation by the government to that effect.").[4]

[¶17.]    Indeed, no genuine issue of material fact exists.  There is no dispute that the Trancyngers borrowed money from BAC and secured that loan with a mortgage in favor of BAC.  Trancyngers do not dispute the interest rate, the payment amount, or their default.  Further, Trancyngers presented evidence that matched what BAC claimed was due under the mortgage and admitted the intent of the mortgage was to encumber Lot 26A.  They were allowed almost four years to avoid foreclosure by bringing their default current, but failed to do so.  Therefore, the circuit court did not err in granting summary judgment to BAC.

[¶18.]    Finally, Trancyngers claim that summary judgment was improper because the circuit court incorrectly concluded that Trancyngers had not made an appearance or filed responsive pleadings in the case.  "We will affirm the circuit court's ruling on a motion for summary judgment when any basis exists to support its ruling." *DRD Enters., LLC v. Flickema*, 2010 S.D. 88, ¶ 10, 791 N.W.2d 180, 184

---

4.    Trancyngers also argue they were improperly "dual-tracked." "Dual-tracking" is when a lender allows a borrower to pursue loss mitigation options (e.g., loan modification, deed in lieu of foreclosure, short sale) while simultaneously pursuing foreclosure.  Trancyngers claim that "dual-tracking" has been banned by government banking regulators, but fail to cite to any authority stating the same.  Trancyngers also fail to explain whether any alleged ban applies to them.  Therefore, we decline to address the argument. SDCL 15-26A-60(6) ("The argument shall contain the contentions of the party with respect to the issues presented, the reasons therefore, and the citations to the authorities relied on.").

(citation omitted). Because we conclude that the circuit court correctly ruled that no genuine issue of material fact exists, we decline to address this argument.

[¶19.] 3. *Whether the circuit court erred in awarding BAC attorney fees and costs.*

[¶20.] Trancyngers agree attorney fees and costs may be awarded in this case.[5] However, they argue that the circuit court did not properly analyze the factors necessary in determining attorney fees. "[T]he calculation of attorney fees must begin with the hourly fee multiplied by the attorney's hours." *Eagle Ridge*, 2013 S.D. 21, ¶ 28, 827 N.W.2d at 867 (citation omitted). In addition, "[t]he award of attorney fees must be reasonable for the services rendered." *Id.* (citation and internal quotation marks omitted). A number of factors are to be considered when determining a reasonable award of attorney fees.[6] *Id.* However, no one factor predominates as all factors should be taken into consideration. *Id.* Furthermore,

---

5. Trancyngers mistakenly reason that attorney fees and costs are allowed under SDCL 21-50-4, which governs attorney fee awards in foreclosures of real estate contracts. In the instant case, attorney fee awards are allowed under SDCL 21-49-13(2), which governs attorney fee awards in short-term redemption mortgages, and paragraph 14 of the subject mortgage.

6. These factors include:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer . . . performing the services; and (8) whether the fee is fixed or contingent.

*Eagle Ridge*, 2013 S.D. 21, ¶ 28, 827 N.W.2d at 867 (citation omitted).

"[t]he trial court is required to make specific findings based upon the factors." *Id.* ¶ 29, 827 N.W.2d at 868 (citation and internal quotation marks omitted).

[¶21.]     At the May 3, 2013 summary judgment hearing Judge Macy articulated his position on the award of attorney fees: "[B]ased on the size of this file and the litigation that's been necessary, your claim appears to be reasonable." During the same exchange, he said, "Before I sign off on the attorney fees, I'm going to require that you provide an affidavit that shows the actual time spent on the file." Again, he stated, "It appears, based on the size of the file and all the work that's been done, that [the] fee is reasonable, but I want to review that before I sign off on that." On May 10, BAC's attorney filed an affidavit itemizing the amount of time worked on the file and analyzing the factors considered in determining whether the attorney fees are reasonable.

[¶22.]     The amount of time spent and hourly rate were itemized by BAC's attorney, which totaled $3,460.75. However, BAC's attorney had previously agreed to represent BAC for a flat rate. BAC's attorney agreed to litigate the case at a flat fee of $950 for the default residential foreclosure, $875 for litigated attorney fees, and $875 for clearing title. Including $108 for sales tax, the total amount requested was $2,808, which the circuit court awarded as part of the judgment.

[¶23.]     The circuit court did not abuse its discretion in awarding BAC its attorney fees and costs. In making the determination, Judge Macy made a ruling based on the type of litigation, the length of the litigation, the amount of time spent on the case, and the fee customarily charged for similar services. In doing so, and after receiving an affidavit outlining the same, he concluded that the fee was

reasonable by awarding the fees as part of the judgment. "Although this Court has expressed a preference for written findings and conclusions, it has accepted oral findings and conclusions where the basis of the trial court's ruling is clear." *State v. Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 23, 785 N.W.2d 272, 281 (citing *In re Guardianship & Conservatorship of Fischer*, 2008 S.D. 51, ¶ 8, 752 N.W.2d 215, 217; *State v. Stevenson*, 2002 S.D. 120, ¶ 10, 652 N.W.2d 735, 739). Here, it is clear Judge Macy based his decision on the length and type of litigation, the amount of time spent on the case, and the affidavit of BAC's attorney. Judge Macy's decision was supported by sound reason and evidence and therefore, was not an abuse of discretion.

[¶24.] 4. *Whether the circuit court erred in reforming the mortgage.*

[¶25.] Trancyngers argue the circuit court erred when it reformed the mortgage to only encumber Lot 26A instead of all of Lot 26 because at the time when Trancyngers signed the mortgage, no legal description was attached. Trancyngers argue that because there was no legal description, the circuit court created a lien on the real estate that had not previously existed. Even assuming Trancyngers' factual allegations are correct,[7] the circuit court did not err in reforming the mortgage.

[¶26.] When a mutual mistake is made between two parties, the contract may be revised by the court. SDCL 21-11-1. In revising the contract, the court may inquire into the parties' intentions. SDCL 21-11-3. When asked in open court whether he intended to mortgage Lot 26A, Mr. Trancynger responded affirmatively.

---

7. BAC's Exhibits show Lot 26's legal description was attached to the mortgage.

#26736

The circuit court's revision of the mortgage reflected the true intention of the parties and therefore, was not error.[8]

[¶27.]    Affirmed.

[¶28.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.

---

8.    Trancyngers advance a hearsay argument based on a letter BAC used to prove the intention of Trancyngers to encumber Lot 26A. Because Mr. Trancynger admitted his intention was to encumber Lot 26A, the letter is unnecessary and our opinion on the hearsay issue is of no value.