#27567-a-JMK

**2016 S.D. 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,               Plaintiff and Appellee,

v.

TIMOTHY J. BARITEAU,               Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE GREGORY J. STOLTENBURG
Judge

* * * *

MARTY J. JACKLEY
Attorney General

KELLY MARNETTE
Assistant Attorney General
Pierre, South Dakota               Attorneys for plaintiff
                                       and appellee.

RICK A. RIBSTEIN of
Ribstein & Hogan Law Firm
Brookings, South Dakota             Attorneys for defendant
                                       and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MAY 23, 2016

OPINION FILED **08/03/16**

#27567

KERN, Justice

[¶1.] On June 25, 2015, a jury convicted Timothy J. Bariteau of sexual contact with a child under sixteen years of age in violation of SDCL 22-22-7. Bariteau appeals his conviction alleging the circuit court erred in refusing to grant his motion for judgment of acquittal on the grounds of insufficiency of the evidence. He also alleges that the prosecutor engaged in misconduct by making a misstatement of law during closing arguments, which Bariteau claims constitutes plain error. We affirm.

## BACKGROUND

[¶2.] In sixth grade, H.S. started attending youth group at Morningside Abundant Life Church in Brookings, South Dakota. She met Bariteau, the Church's worship pastor. As part of his duties, Bariteau assisted with youth group and led music at the Church. Bariteau and H.S. started communicating through Facebook when H.S. was in seventh grade. H.S. was 14 years old during the relevant time frame. Bariteau was 37 years old. Initially, the conversations were innocuous. Bariteau told investigators H.S. openly discussed with him her sexual relationships with boys her age. Bariteau believed she needed guidance and "allowed her to confide in him."

[¶3.] In the spring of 2013, the conversations became flirtatious. Bariteau provided H.S. with his mobile phone number so she could send text messages to him. The two also communicated via Facebook. Bariteau admitted to investigators that the flirtations were enticing and "felt good." He told the investigators that he was unfamiliar with such attention from females of any age and that "nobody had

-1-

ever talked to [him] like that." In the exchanged messages, H.S. asked Bariteau to describe the things he would like to do to her body. Bariteau recalled messaging H.S. that he wanted to put her on his lap and run his hand up her leg. H.S. asked Bariteau what he thought was the most beautiful part of her body. He replied, "your butt." During this exchange, Bariteau also told H.S. he would hug her if she were there, pick her up off her feet, and squeeze her butt. That same day, Bariteau and H.S. saw each other at Camelot Park. Bariteau asked for a hug. H.S. testified that when they hugged "he reached down and grabbed [her] butt." Bariteau told investigators that, after he grabbed H.S.'s butt, he sent H.S. a text message apologizing for his inappropriate behavior.

[¶4.] Bariteau described to investigators additional interactions he had with H.S. Their communications were sporadic and, when their messaging became inappropriate, he attempted to stop the contact. H.S., however, continued to contact him. Bariteau also admitted that he had put his hand on H.S.'s buttocks or leg on other occasions.

[¶5.] H.S. testified that the relationship with Bariteau became more physical "[t]oward the middle of [her] eighth grade year . . . . He started, you know, moving closer, trying more things, that kind of stuff." During 2013 and 2014, H.S. attended youth group services at the Church on Wednesday evenings. The Church had an open sanctuary with an elevated sound booth in the back. The sound booth contained the control panel for the lights and music. The booth was large enough for two persons to stand in the room without touching. Before youth services, H.S.

and other youth would play with the controls in the sound booth and turn on the colored lights in the Church.

[¶6.] H.S. testified that on several occasions Bariteau came into the sound booth, stood directly behind her, and began pressing his erect penis and groin against her buttocks. Both were fully clothed. H.S. testified that Bariteau would continue to press his groin against her buttocks until she moved away or left the booth. H.S. testified that Bariteau told her not to tell anyone about their contact. Bariteau admitted to investigators that he was physically aroused on at least a couple of these occasions.

[¶7.] The last physical contact between Bariteau and H.S. occurred in April or May of 2014. H.S. was in the sound booth and Bariteau came into the booth and stood behind her. He pressed his groin and erect penis against her buttocks. H.S. tried to leave the sound booth but Bariteau pulled her back. He hugged her, grabbed her butt, and kissed her neck before they separated. It is undisputed that Bariteau never touched H.S.'s breasts, vagina, or anus during this incident or during any of the previous incidents.

[¶8.] In July 2014, H.S. sent Bariteau a message through Facebook. Bariteau told investigators that H.S. indicated that she had a new mobile phone and asked for his phone number. Bariteau gave his mobile phone number to H.S. and the parties began texting and sending messages and photographs through Snapchat.[1] The communication immediately became flirtatious, and as Bariteau

---

1. Snapchat is an image messaging mobile phone application in which a user can send a photograph or text message with a set time to expire. The

(continued . . .)

told investigators, the parties "ended up having a very graphic conversation by the end of it." Bariteau said he sent H.S. two photographs of himself grabbing his erect penis through his shorts. Bariteau told investigators that he woke up the next morning "freaking out." He said H.S. messaged him throughout the day and he ignored her messages. He claimed she then started sending him angry messages, which he continued to ignore. Bariteau ultimately received a message from H.S.'s boyfriend confronting him about his conduct. Bariteau told investigators that he panicked and told his wife about his actions. Bariteau then met with his senior pastor and advised him about the situation. The senior pastor contacted law enforcement to report the incident.

[¶9.] Investigators questioned Bariteau on July 17, 2014, and July 24, 2014. During the interviews Bariteau admitted that during the April or May 2014 incident he pressed his erect penis against H.S.'s buttocks for up to a minute and that he was sexually aroused. Bariteau was indicted on October 16, 2014, pursuant to SDCL 22-22-7, for one count of sexual contact with a child under sixteen years of age. A jury trial was held on June 24–25, 2015. The State presented testimony from H.S. and Agent Jeff Kollars from the South Dakota Division of Criminal Investigation. The State introduced the two recorded interviews with Bariteau into evidence.

---

(. . . continued)
    receiving user can only view the text message or photograph for one to ten seconds before the image or text message expires and is automatically deleted from the mobile phone.

[¶10.] At the close of the State's case in chief, Bariteau's counsel moved for a judgment of acquittal alleging there was insufficient evidence to sustain a conviction. Counsel argued that the State did not prove the elements of sexual contact because Bariteau did not touch H.S.'s breasts, genitalia, or anus. The circuit court denied the motion. On appeal, Bariteau alleges that the State committed prosecutorial misconduct by misstating the law during closing arguments. Bariteau's counsel, however, did not object to the alleged misstatement at the time it was made. On June 25, 2015, the jury returned a guilty verdict. On August 18, 2015, the circuit court sentenced Bariteau to twelve years in the South Dakota State Penitentiary, with four years suspended. Bariteau appeals. We restate his issues as follows:

1. Whether the circuit court erred by denying Bariteau's motion for judgment of acquittal.

2. Whether the prosecutor committed prosecutorial misconduct requiring reversal.

**ANALYSIS**

[¶11.] Bariteau argues that no rational jury could have "reached a guilty verdict as the State failed to introduce any evidence that Mr. Bariteau touched in any way the breasts, genitalia, or anus of the minor child, and therefore no sexual contact took place." He asserts that the act of pressing his genitalia against H.S.'s buttocks does not constitute sexual contact as the act "did not put him into contact with her anus." Bariteau contends that sexual contact is not concerned with what does the touching. In his view, sexual contact requires his *touching of* H.S.'s breasts, genitalia, or anus. Bariteau argues that the phrase *touching of* is

exclusionary, meaning that *touching by* or *touching with* his penis is not sexual contact. Accordingly, Bariteau asserts that using his penis to touch H.S.'s buttocks does not constitute sexual contact.

[¶12.] The State, in response, contends that sexual contact as defined in SDCL 22-22-7.1 includes any touching of the breasts (female), genitalia, and anus of any person. Accordingly, the State asserts that sexual contact occurs when a defendant touches a victim with his genitalia. In support of this assertion, the State directs this Court to several prior cases involving similar factual scenarios.

[¶13.] We review the denial of a motion for judgment of acquittal de novo. *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83. The ultimate question to be decided during our review "is whether the evidence was sufficient to sustain the convictions." *State v. Holzer*, 2000 S.D. 75, ¶ 10, 611 N.W.2d 647, 650. In making this determination, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Brende*, 2013 S.D. 56, ¶ 21, 835 N.W.2d 131, 140 (quoting *State v. Plenty Horse*, 2007 S.D. 114, ¶ 5, 741 N.W.2d 763, 765). "[T]he court will accept the evidence, and the most favorable inference fairly drawn therefrom, which will support the verdict." *State v. McGill*, 536 N.W.2d 89, 92 (S.D. 1995) (quoting *State v. Heftel*, 513 N.W.2d 397, 399 (S.D. 1994)).

[¶14.] Bariteau was convicted of violating SDCL 22-22-7, which provides,

> Any person, sixteen years of age or older, who knowingly
> engages in sexual contact with another person, other than that
> person's spouse if the other person is under the age of sixteen
> years is guilty of a Class 3 felony. If the victim is at least

thirteen years of age and the actor is less than five years older than the victim, the actor is guilty of a Class 1 misdemeanor. Notwithstanding § 23A-42-2, a charge brought pursuant to this section may be commenced at any time before the victim becomes age twenty-five or within seven years of the commission of the crime, whichever is longer.

SDCL 22-22-7.1 defines sexual contact as "any touching, not amounting to rape, whether or not through clothing or other covering, of the breasts of a female or the genitalia or anus of any person with the intent to arouse or gratify the sexual desire of either party."[2] The issue presented is whether sexual contact includes Bariteau's act of pressing his erect penis against H.S.'s buttocks.

[¶15.]        Although the State urges us to look to our prior sexual contact cases to answer this question, the cases are of limited precedential value as they do not analyze the definition of sexual contact in SDCL 22-22-7.1.[3] Whether the definition

---

2.    All references herein to breasts refer to "breasts of a female" as provided for in SDCL 22-22-7.1.

3.    In *State v. Brende*, defendant was convicted of two counts of sexual contact with a child under sixteen years of age, pursuant to SDCL 22-22-7.1, and two counts of first-degree rape. 2013 S.D. 56, ¶ 1, 835 N.W.2d 131, 135. Brende appealed raising a number of issues including insufficiency of the evidence. We vacated one of the rape convictions. But we affirmed the convictions for sexual contact finding sufficient the evidence that Brende placed his penis in the minor child's butt crack. Bariteau asserts that *Brende* is distinguishable as Brende inserted his penis into the minor's butt crack, which necessarily put his penis in direct contact with the minor's anus. As there was no allegation that Brende's penis penetrated the child's anus we found the evidence insufficient to support a conviction for rape, but sufficient for sexual contact. While we did affirm the conviction, the *definition* of sexual contact was not examined by the Court with application to the facts.

     In *People ex rel. W.T.M.* we reversed W.T.M.'s adjudication as a juvenile delinquent for a violation of SDCL 22-22-7. 2010 S.D. 45, ¶ 1, 785 N.W.2d 264, 265. The facts provided that W.T.M., an 11-year old, dared C.K., an eight-year old, as part of a "truth or dare" game "to let W.T.M. touch his penis

(continued . . .)

of sexual contact includes a defendant touching his genitalia to the body of a minor victim is a case of first impression requiring statutory interpretation of SDCL 22-22-7 and -7.1. Our interpretation of a statute begins with an analysis of its plain language and structure. *Puetz Corp. v. S.D. Dep't of Revenue*, 2015 S.D. 82, ¶ 16, 871 N.W.2d 632, 637. "'The language expressed in the statute is the paramount consideration' and 'if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction.'" *Dale v. Young*, 2015 S.D. 96, ¶ 6, 873 N.W.2d 72, 74.

[¶16.]        SDCL 22-22-7 prohibits "[a]*ny person*, sixteen years of age or older, [from] knowingly *engag*[*ing*] in *sexual contact* with *another person*, other than that person's spouse if the other person is under the age of sixteen years[.]" (Emphasis added.) Sexual contact includes "*any touching* . . . whether or not through clothing or other covering, of . . . the genitalia . . . of any person with the intent to arouse or

_____

(. . . continued)

> to C.K.'s 'butt.'" *Id.* ¶ 2, 785 N.W.2d at 265. We determined that while there was evidence to support that W.T.M. intended to touch his penis to C.K.'s buttocks, there was no evidence "to indicate it was done with the specific intent to arouse or produce sexual gratification." *Id.* ¶ 21, 785 N.W.2d at 268. Bariteau correctly notes that the central issue in the case was whether W.T.M. had the requisite specific intent. No specific consideration was given to "whether or not the acts themselves were sexual contact under SDCL 22-22-7.1[.]"

> In *State v. Thompson*, defendant appealed convictions of sexual contact with a child under sixteen years of age arising from his admission that a six-year-old child had touched his penis. 1997 S.D. 15, ¶¶ 1, 6, 560 N.W.2d 535, 536-37, *abrogated by State v. Plastow*, 2015 S.D. 100, 873 N.W.2d 222. At trial, and at all times, the child steadfastly denied touching defendant's penis. We reversed the conviction holding that the circuit court erred in admitting defendant's statement as "there was no independent evidence to corroborate it." *Id.* ¶ 22, 560 N.W.2d at 540. The question of whether the facts met the statutory definition of sexual contact was not addressed.

gratify the sexual desire of either party." SDCL 22-22-7.1 (emphasis added). The Legislature defined sexual contact to include "*any touching*," not "*a defendant's touching*" as suggested by the dissent in its opening paragraph. Dissent ¶ 30. Under the plain language of SDCL 22-22-7 and -7.1 read together, a criminal act is committed when "[*a*]*ny person . . . knowingly engages* in [*any touching . . . of . . . the genitalia . . . of any person* with the intent to arouse or gratify the sexual desire of either party] *with another person*[.]" SDCL 22-22-7, -7.1 (emphasis added).

[¶17.] Bariteau is a person, older than sixteen years, who knowingly engaged in touching with H.S., another person under the age of sixteen. We must determine, therefore, if the touching Bariteau engaged in is "sexual contact." If it is, then the touching Bariteau knowingly engaged in with H.S. is a crime under SDCL 22-22-7. Sexual contact includes "*any touching . . . of . . . the genitalia . . . of any person* with the intent to arouse or gratify the sexual desire of either party." Bariteau's touching of his penis[4] with the intent to arouse or gratify his sexual desire or that of H.S. is, under the plain language of SDCL 22-22-7.1, sexual contact. Thus, Bariteau violated SDCL 22-22-7 when he knowingly engaged in his sexual contact with H.S.

[¶18.] As noted above, the dissent's analysis is based on the incorrect premise that SDCL 22-22-7.1 only implicates "*a defendant's 'touching*[.]'" Dissent ¶ 30.

---

4. The dissent notes in ¶ 31 that "defendant cannot be convicted for touching his own penis." Bariteau is not being *convicted* of touching his own penis. SDCL 22-22-7.1 describes conduct that is sexual contact. Bariteau touching his penis is sexual contact. It only becomes a crime because *SDCL 22-22-7* prohibits Bariteau from engaging in sexual contact *with another person under the age of sixteen*.

Moreover, in making this assertion, the dissent does exactly what it accuses this opinion of doing—inserting words into the statute that the Legislature did not include. The definition of sexual contact is broadly written to include *any touching*. We assume "that statutes mean what they say and that [L]egislators have said what they meant." *Fin-Ag, Inc. v. Pipestone Livestock Auction Mkt., Inc.*, 2008 S.D. 48, ¶ 56, 754 N.W.2d 29, 50 (quoting *Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D. 1984)). Had our Legislature intended to prohibit only a "*defendant's touching*," it would have said so.

[¶19.] Additionally, by construing SDCL 22-22-7.1 in isolation, the dissent fails to adequately consider the fact that sexual contact includes "*any touching*" of the specified parts of "*any person*." When read in conjunction with the penalizing statute, *any person* as used in SDCL 22-22-7.1 does not refer only to the victim.[56] This is because the penalizing statute specifically distinguishes between the *actor* and the *victim*. The Legislature's inclusion of actor and victim in SDCL 22-22-7 shows that our Legislature distinguishes between parties when it sees fit.

---

5.  Contrary to the dissent's assertion in ¶ 31, our contention is not contingent on reading SDCL 22-22-7.1 in reference to a defendant's body parts. The plain language of SDCL 22-22-7.1 refers to *any touching* of certain body parts of *any person*. Thus, our task in reading the plain language of the statute is to determine if Bariteau's touching of his penis meets the definition of sexual contact. Indeed, this case does not implicate any touching of the victim's genitalia, breast, or anus. Thus, the acts of the victim in this case are irrelevant.

6.  The dissent notes that "Bariteau did not force or induce the child to touch his penis . . . ." Dissent ¶ 33. But, even if Bariteau did force the victim to touch his penis, under the dissent's interpretation, that act is not a crime. This is because the dissent claims "any person" in SDCL 22-22-7.1 is limited to the "defendant's touching" of the designated body parts.

[¶20.]     To commit a *crime* under SDCL 22-22-7, Bariteau needed to knowingly engage in *sexual contact* with H.S.[7]  Bariteau knowingly engaged in the touching of his genitalia to H.S., another person, with the intent to arouse or gratify the sexual desires of either party; therefore, he knowingly engaged in sexual contact with H.S. To conclude otherwise, as the prosecutor noted at trial, would mean that "Mr. Bariteau could have put his erect penis between the thighs of [H.S.], worked it back and forth until he had an orgasm" and no sexual contact would have occurred.  That is absurd.  Certainly, the Legislature did not intend such an interpretation when it broadly defined "sexual contact."  Moreover, the Legislature enacted this statute "to protect the morals of children and to prevent their defilement."  *State v. Schnaidt*, 410 N.W.2d 539, 540 (S.D. 1987) (quoting *State v. Shields*, 81 S.D. 184, 186, 132 N.W.2d 384, 385 (1965)).  We conclude that the touching of Bariteau's genitalia to H.S.'s buttocks is sexual contact as defined in SDCL 22-22-7.1.

[¶21.]     Bariteau also claims that the evidence was insufficient to establish that the touching of his genitalia to H.S. was for the purpose of sexual gratification. But he admitted to investigators that he was aroused.  H.S. also testified that she could feel Bariteau's erect penis pressed against her buttocks.  Certainly any rational trier of fact could have found this evidence sufficient to show that Bariteau's act was "with the intent to arouse or gratify the sexual desire of either

---

7.    Bariteau engaged in an act that meets the statutory definition of sexual contact.  That alone is not a crime.  But because Bariteau's act of sexual contact was done *with another person* under the age of sixteen, Bariteau committed a crime under SDCL 22-22-7.

party" as required by SDCL 22-22-7.1. The circuit court did not err in denying Bariteau's motion for judgment of acquittal.

[¶22.]        Bariteau next argues that the State committed prosecutorial misconduct by allegedly misstating the law during closing argument. During closing arguments, the State remarked:

> Mr. Ribstein wants you to believe that our law that prohibits sexual contact with a child under 16 by a person over 16 . . . that our law allowed Pastor Bariteau to do what he did to this young girl? That's not the law.
>
> This law says sexual contact is any touching, et cetera, et cetera, one of the et cetera is the genitalia. I suppose Mr. Ribstein wants you to believe that an erect penis on the part of [Bariteau] was not genitalia. It was. And he was touching [H.S.'s] butt with it. Touching of his genitalia to [H.S.]

Bariteau contends that the State incorrectly argued "that SDCL 22-22-7.1 is concerned with the genitalia of the accused of Sexual Contact, when it is in fact not." He argues that SDCL 22-22-7.1 is limited to only "what is being touched on the victim, not what the perpetrator is using to touch." Bariteau believes that the misstatements prejudiced him and denied him a fair trial. In response, the State contends the prosecutor's argument was a correct statement of law. Without a misstatement, the State asserts there is no error and no misconduct.

[¶23.]        "Prosecutorial misconduct implies a dishonest act or an attempt to persuade the jury by use of deception or by reprehensible methods." *State v. Hayes*, 2014 S.D. 72, ¶ 23, 855 N.W.2d 668, 675 (quoting *State v. Lee*, 1999 S.D. 81, ¶ 20, 599 N.W.2d 630, 634). We review a claim of prosecutorial misconduct under the abuse of discretion standard. *State v. Smith*, 1999 S.D. 83, ¶ 39, 599 N.W.2d 344, 353. However, as Bariteau acknowledges, counsel did not object to these alleged

misstatements at trial, which limits our review to plain error analysis. *Hayes*, 2014 S.D. 72, ¶ 25, 855 N.W.2d at 675; SDCL 23A-44-15 (Rule 52(b)).

[¶24.]     To establish plain error Bariteau must establish that there was "(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *State v. Mulligan*, 2007 S.D. 67, ¶ 26, 736 N.W.2d 808, 818 (quoting *State v. Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d 439, 443).  Bariteau bears the burden of proving that he was prejudiced by plain error. *State v. Whitfield*, 2015 S.D. 17, ¶ 16, 862 N.W.2d 133, 139.  "We invoke our discretion under the plain error rule cautiously and only in 'exceptional circumstances.'" *State v. Fischer*, 2016 S.D. 1, ¶ 15, 873 N.W.2d 681, 687 (quoting *State v. Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d at 443).

[¶25.]     Bariteau bases his claim of error upon his argument that SDCL 22-22-7.1 is not concerned with "what the perpetrator is using to touch" and instead is concerned only "with what is being touched on the victim." As noted above we have determined that the language of SDCL 22-22-7.1 does not differentiate between the genitalia of the minor and that of the perpetrator, contrary to Bariteau's assertion. SDCL 22-22-7 prohibits an accused from using his genitalia to touch another for sexual gratification. Accordingly, the prosecutor's statements were not erroneous. Because no error occurred, it is unnecessary to perform an analysis of the elements of the plain error doctrine. There was no dishonest act or deception by the prosecutor and the statement was not unfairly prejudicial to Bariteau; therefore, the prosecutor's statement did not amount to prosecutorial misconduct.

## CONCLUSION

[¶26.]     Based upon our interpretation of SDCL 22-22-7.1, we conclude that Bariteau's act of pressing his erect penis against H.S.'s buttocks constituted sexual contact and, as a result, a violation of SDCL 22-22-7. The circuit court properly denied Bariteau's motion for judgment of acquittal. In light of this interpretation, the prosecutor's closing argument was not erroneous and did not constitute prosecutorial misconduct.

[¶27.]     We affirm.

[¶28.]     GILBERTSON, Chief Justice, and WILBUR, Justice, concur.

[¶29.]     ZINTER and SEVERSON, Justices, dissent.


ZINTER, Justice (dissenting).

[¶30.]     I respectfully dissent because the majority has rewritten the statutory definition of sexual contact. SDCL 22-22-7 prohibits ***defendants***, sixteen years of age or older, from engaging in sexual contact with children. SDCL 22-22-7.1 defines the types of sexual contact that are prohibited. It prohibits a defendant's "***touching*** . . . ***of*** the breasts of a female or the genitalia or anus of any person[.]" *Id.* These quoted words prohibit a defendant's "touching of"—not a defendant's "touching with"—the specified body parts. Additionally, the specified body parts do not include a child's buttocks. *See id.* Therefore, Bariteau's touching the child's buttocks *with* his genitals, although reprehensible, was not prohibited by the ordinary meaning of the words in SDCL 22-22-7 and SDCL 22-22-7.1.

[¶31.] The majority upholds the conviction, contending that "*Bariteau's touching of his* penis . . . is, under the plain language of SDCL 22-22-7.1, sexual contact." *See supra* ¶ 17 (emphasis added). But the defendant cannot be convicted for touching his own penis. Therefore, the validity of the majority's contention is contingent on reading SDCL 22-22-7.1 to define sexual contact to include "'*any touching,*' not '*a defendant's touching*'" involving the specified body parts. *See supra* ¶¶ 16, 18, 19. The validity of the majority's contention is also contingent on reading SDCL 22-22-7.1's reference to the specified body parts of "any person" to be a reference to the defendant's body parts. *See supra* ¶ 19. However, the words in the text of SDCL 22-22-7.1 do not prohibit any touching *involving* the specified body parts of *the defendant*. The majority arrives at its contrary contention by removing the words "any touching" and "any person" from their contextual ties. When read in context, SDCL 22-22-7 and SDCL 22-22-7.1 only prohibit *a defendant's touching of* the breasts of a female, or the genitalia or anus of some *other* person. *See id.*

[¶32.] The majority first insists that because there is a reference to the words "any person" at the end of the phrase specifying the body parts in SDCL 22-22-7.1, the specified body parts do "not refer only to the victim," they also refer to the defendant's body parts. *See supra* ¶ 19. This claim takes the words "any person" out of context. The complete phrase prohibits a defendant's touching of "the breasts of a female *or* the genitalia or anus of any person[.]" SDCL 22-22-7.1 (emphasis added). When read in context, it is obvious that the Legislature's use of the words "any person" in this phrase was only intended to preserve a gender distinction among the body parts that may not be touched. The first part of the phrase

references female breasts, and the words "any person" follow and modify the words in the second part of the phrase referencing "genitalia or anus." *See id.* Thus, the modifying words "any person" are used to make clear that the touching of breasts constitutes sexual contact only if they are a female's, while sexual contact includes the touching of the genitalia or anus "of any person," i.e., both males and females. *See id.* The majority errs in construing the words "any person" in this phrase to be a reference to the defendant actor's body parts.[8]

[¶33.] The majority also insists that the conviction must be upheld because sexual contact includes "any touching" involving the specified body parts. *See supra* ¶ 18. But Bariteau did not force or induce the child to touch his penis: he touched the child *with* his penis. Therefore, to sustain the conviction on the facts of this case, the majority changes the statutory definition from one prohibiting "any touching of" genitals to one prohibiting "any touching with" genitals. It is only by adding the word "with" (or "to"[9]) and giving the statutory word "of" no meaning that Bariteau's conviction can be upheld. In interpreting statutes we do not, however, "add to or subtract from the language of a statute." *City of Sioux Falls v. Ewoldt,*

---

8. Concededly, the general statute—SDCL 22-22-7—also contains a reference to "any person." It prohibits "any person" from engaging in sexual contact. But that general prohibition against engaging in sexual contact does not define what types of sexual contact are prohibited. SDCL 22-22-7.1 defines the types of sexual contact that are prohibited, and the prohibited acts only include the "touching of" the breasts of females and the genitalia or ani of both male and female victims.

9. The majority avoids acknowledging its implicit use of the word "with" by using the word "to" in a telling grammatical phrase: the majority contends Bariteau engaged in sexual contact because he knowingly engaged in the *"touching of his genitals to"* the victim. *See supra* ¶ 20.

1997 S.D. 106, ¶ 13, 568 N.W.2d 764, 767. If South Dakota statutes are to prohibit a defendant's *touching with,* or *any touching involving* a defendant's genitals, the Legislature must do what the other states have done: amend the statute to criminalize such conduct.[10]

---

10. *See* Alaska Stat. Ann. § 11.81.900(59) (West, Westlaw through 2016 Legis. Sess.) ("'sexual contact' means . . . (ii) *knowingly causing the victim to touch,* directly or through clothing, the *defendant's or* victim's genitals, anus, or female breast[.]") (emphasis added); Colo. Rev. Stat. Ann. § 18-3-401(4) (West, Westlaw through 2016 Legis. Sess.) ("'Sexual contact' means the knowing touching of . . . the victim's intimate parts by the actor, *or of the actor's intimate parts by the victim*[]") (emphasis added); Conn. Gen. Stat. Ann. § 53a-65(3) (West, Westlaw through 2016 Legis. Sess.) ("'Sexual contact' means . . . *any contact of the intimate parts of the actor*"); Del. Code Ann. tit. 11, § 761(f)(2) (West, Westlaw through 2016 Legis. Sess.) ("'Sexual contact' means . . . [a]ny intentional touching of another person *with the defendant's anus, breast, buttocks or genitalia*") (emphasis added); Ga. Code Ann. § 16-6-5.1(a)(4) (West, Westlaw through 2016 Legis. Sess.) ("'Sexual contact' means any contact between the actor and a person not married to the actor *involving the intimate parts of either person* for the purpose of sexual gratification of the actor.") (emphasis added); Kan. Stat. Ann. § 21-5506(a)(1) (West, Westlaw through 2016 Legis. Sess.) ("Any . . . touching of the person *of either the child or the offender*, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both[.]") (emphasis added); Mo. Ann. Stat. § 566.010(3) (West, Westlaw through 2016 Legis. Sess.) ("'Sexual contact', any touching of another person with the genitals[.]"); Neb. Rev. Stat. Ann. § 28-318(5) (West, Westlaw through 2016 Legis. Sess.) ("Sexual contact shall also mean the *touching by the victim of the actor's sexual or intimate parts* or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is intentionally caused by the actor.") (emphasis added); N.H. Rev. Stat. Ann. § 632-A:1(IV) (West, Westlaw through 2016 Legis. Sess.) ("'Sexual contact' means the intentional touching whether directly, through clothing, or otherwise, *of the victim's or actor's sexual or intimate parts*, including emissions, tongue, anus, breasts, and buttocks.") (emphasis added); N.J. Stat. Ann. 2C:14-1(d) (West, Westlaw through 2016 Legis. Sess.) ("'Sexual contact' means an intentional touching *by the victim or actor,* either directly or through clothing, *of the victim's or actor's intimate parts*[.]") (emphasis added); N.M. Stat. Ann. § 30-9-13(A) (West, Westlaw through 2016 Legis. Sess.) ("Criminal sexual contact of a minor is . . . the unlawful and intentional causing of a minor to touch one's intimate parts."); N.Y. Penal Law § 130.00(3) (McKinney, Westlaw through

(continued . . .)

[¶34.]     The majority rectifies the South Dakota Legislature's failure to criminalize Bariteau's misconduct by construing SDCL 22-22-7, -7.1 under the absurdity doctrine. *See supra* ¶ 20. The absurdity doctrine does not, however, apply because adherence to the ordinary meaning of the words actually used does not create an absurdity. SDCL 22-22-7 and SDCL 22-22-7.1 criminalize a wide range of sexual acts that are uniformly accepted as criminal misconduct. Therefore, the meaning of that text makes sense. The problem is that by prohibiting the "touching of" specified body parts of the victim, but not the "touching with" the body parts of the defendant, the Legislature simply failed to anticipate Bariteau's different kind of act. And rectifying that oversight is a legislative rather than judicial function. *See State v. Burdick*, 2006 S.D. 23, ¶ 18, 712 N.W.2d 5, 10 ("[I]t is

---

(. . . continued)

2016 Legis. Sess.) ("'Sexual contact' . . . *includes the touching of the actor* by the victim[.]") (emphasis added); N.C. Gen. Stat. Ann. § 14-27.20(5) (West, Westlaw through 2016 Legis. Sess.) ("'Sexual contact' means . . . (ii) a person touching another person with their own sexual organ, anus, breast, groin, or buttocks[.]"); Ohio Rev. Code Ann. § 2907.01(B) (West, Westlaw through 2015–2016 Legis. Sess.) (Defining sexual contact to include "any touching of . . . [a] buttock[.]"); R.I. Gen. Laws Ann. § 11-37-1(7) (West, Westlaw through 2016 Legis. Sess.) ("'Sexual contact' means the intentional touching of the victim's *or accused's intimate parts*[.]") (emphasis added); Tenn. Code Ann. § 39-13-501(6) (West, Westlaw through 2016 Legis. Sess.) ("'Sexual contact' includes the intentional touching of the victim's, *the defendant's*, or any other person's intimate parts[.]") (emphasis added); W. Va. Code Ann. § 61-8B-1(6) (West, Westlaw through 2016 Legis. Sess.) ("'Sexual contact' means any . . . intentional touching of *any part of another person's body by the actor's sex organs*[.]") (emphasis added); Wis. Stat. Ann. § 948.01(5) (West, Westlaw through 2015 Act 392) ("'Sexual contact' means any of the following . . . 2. Intentional touching by the complainant, *by the use of any body part or object, of the defendant's intimate parts*[.]") (emphasis added); Wyo. Stat. Ann. § 6-2-301(a)(vi) (West, Westlaw through 2016 Budget Sess.) ("'Sexual contact' means touching . . . *of the actor's intimate parts by the victim*[.]") (emphasis added).

the province of the Legislature to define what conduct is criminal and provide appropriate punishment."). "We must accept what the [L]egislature has said—and has not said—rather than attempt to rewrite the law to conform with what we or others think it should have said." *Id.*; *see also State v. Koerner*, 1999 S.D. 161, ¶ 9, 603 N.W.2d 718, 722 (abiding by the legislative text that failed to criminalize purported criminal conduct). Further, under our Constitution, it is not this Court's role to fix statutes—the "power to fix statutes substantively would give the Judicial Branch too much leeway to prefer its views about what makes for 'good' laws over those of the Legislative Branch." *See Jaskolski v. Daniels*, 427 F.3d 456, 462 (7th Cir. 2005). Thus, we are obligated to defer to the text of the statutes.

[¶35.] Considering the facts of this case, I empathize with the desire to criminalize Bariteau's conduct. But here, the definitional words used in the SDCL 22-22-7.1—the "touching . . . of" specified body parts—are clear. When the language is this clear, courts are only justified in declaring the meaning of the words used. *See State v. Moss*, 2008 S.D. 64, ¶ 15, 754 N.W.2d 626, 631 ("The intent of a statute is determined from what the [L]egislature said, rather than what the courts think it should have said, and the court must confine itself to the language used."). Additionally, "[w]e have repeatedly stated that when the terms of a statute are clear, certain and unambiguous in their meaning, it is the function of the court to give them effect and not to amend the statute to avoid or produce a particular result." *In re Sales Tax Refund Applications of Black Hills Power & Light Co.*, 298 N.W.2d 799, 802 (S.D. 1980). Because the words used in the definitional statute do not prohibit Bariteau's reprehensible acts, I have no choice but to respectfully

dissent. Only the Legislature may rewrite the statute. The Legislature should amend SDCL 22-22-7.1 to prohibit Bariteau's misconduct.

[¶36.]     SEVERSON, Justice, joins this dissent.